**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| INSTITUTE FOR JUSTICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL L. PARSON, THE | ) | Case No. |
| GOVERNOR OF THE STATE OF | ) | |
| MISSOURI, in his official capacity; | ) | |
| DONALD W. SUMMERS, KIMBERLY | ) | |
| J. BENJAMIN, GEORGE A. | ) | |
| RATERMAN, WAYNE J. HENKE, THE | ) | |
| COMMISSIONERS OF THE | ) | |
| MISSOURI ETHICS COMMISSION, in | ) | |
| their official capacities; and ELIZABETH | ) | |
| ZIEGLER, THE EXECUTIVE | ) | |
| DIRECTOR OF THE MISSOURI | ) | |
| ETHICS COMMISSION, in her official | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, COSTS, AND
ATTORNEYS FEES FOR CONSTITUTIONAL VIOLATIONS**

**NATURE OF THE CASE**

1. This action involves the unconstitutional restriction of the First and Fourteenth Amendment rights of Institute for Justice ("IJ"), lobbyists, and the employees of the Missouri executive branch, by Missouri Executive Order 17-02 (the "Executive Order"), which is maintained and enforced by the Governor of the State of Missouri, the Commissioners of the Missouri Ethics Commission, and the Executive Director of the Missouri Ethics Commission (collectively "Defendants"). IJ distributes written materials to government officials and employees as part of its advocacy. These written materials include books and reports on public

1

policy issues such as professional licensing requirements.  IJ cannot effectively distribute written materials to employees of the Missouri executive branch because such employees are barred from accepting "anything of value," subject to limited exceptions, from lobbyists under the Executive Order.  Indeed, the previous Executive Director of the Missouri Ethics Commission already informed IJ in a letter dated January 16, 2018 that two of its publications on public policy issues, *Bottleneckers* and *License to Work 2*, appeared to "fall within the definition of gift" under the Executive Order, so state employees of the executive branch could not accept these publications from IJ's lobbyists.  Therefore, IJ challenges the relevant provisions of the Executive Order as unconstitutional under the First and Fourteenth Amendments as applied.

## PARTIES

2.      Plaintiff IJ is a 501(c)(3) non-profit civil liberties law firm that, among other things, litigates, engages in research, publishes information and research, and advocates in support of liberty and individuals who are denied their constitutional rights.  IJ is domiciled in Virginia with its offices located at 901 N. Glebe Road, Suite 900, Arlington, VA 22203.  Although IJ's work consists predominately of litigation and communications with the public about policy issues, IJ also engages in some lobbying at the federal, state, and local level.  IJ currently has two registered lobbyists in Missouri and seeks to lobby members of the Missouri executive branch.  Through its lobbyists, IJ has advocated in Missouri for school choice, civil forfeiture reform, and deregulation of African-American hair braiding.

3.      Defendant the Governor of the State of Missouri (the "Governor") is the chief executive of the State of Missouri.  The Governor has the authority to repeal, modify, and/or maintain the Executive Order.  The current Governor is Michael L. Parson.  He is sued here in his official capacity only.

4.      Defendants the Commissioners of the Missouri Ethics Commission (collectively the "MEC") are individuals appointed to serve on the MEC, pursuant to § 105.955, RSMo.  The MEC is responsible, pursuant to § 105.957.1(4), RSMo, for receiving any complaints alleging violation of the provisions of "[a]ny code of conduct promulgated by any department, division or

agency of state government, or by state institutions of higher education, or by executive order. . .” and for investigating those complaints, determining whether a violation has occurred, and making referrals to appropriate disciplinary authority, pursuant to § 105.961, RSMo.  The MEC also has the power to issue advisory opinions, pursuant to § 105.955.16, RSMo.  The current MEC Commissioners are Donald W. Summers, Kimberly J. Benjamin, George A. Ratermann, and Wayne J. Henke.  Mr. Summers is from the 6th Congressional District, Ms. Benjamin is from the 4th Congressional District, Mr. Ratermann is from the 2nd Congressional District, and Mr. Henke is from the 3rd Congressional District in Missouri.  They are sued in their official capacities only. The MEC currently has two vacant seats for Commissioners.  Plaintiff intends to amend its complaint to name any individuals who become MEC Commissioners as additional Defendants in their official capacities only.

5.     Defendant the Executive Director of the MEC is responsible for the administrative operations of the MEC and performs other duties as the MEC may delegate or assign to the Executive Director by law or by rule of the MEC.  § 105.955, RSMo.  The current Executive Director of the MEC is Elizabeth Ziegler.

6.     The Missouri Attorney General is not served as a Defendant, but is provided notice of this Complaint under Mo. Sup. Ct. R. 87.04.

**JURISDICTION AND VENUE**

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and 28 U.S.C. § 1343, and other applicable law.

8.     This Court has personal jurisdiction over the Governor, the MEC, and the Executive Director of the MEC (collectively “Defendants”) because each of the Defendants is a citizen of the State of Missouri, has engaged in activity in Missouri that gives rise to this Action, and has other contacts with the State that make the exercise of personal jurisdiction proper.

9.     Venue is proper in this Court because, upon information and belief, at least one of the Defendants resides in this District, and all the Defendants are residents of Missouri.  28 U.S.C. §1391(b)(1).  The named Defendants live in various divisions within the Eastern District of

Missouri, and some live in the Western District of Missouri.  Upon information and belief, at least one Defendant resides in the Eastern Division of the Eastern District of Missouri.

## FACTUAL BACKGROUND

**A.      The Executive Order Bars Executive Employees from Accepting Anything of Value from Lobbyists.**

10.      On January 9, 2017, the former Governor of Missouri, Eric R. Greitens, issued Executive Order 17-02, which is attached as Exhibit 1.  In relevant part, the Executive Order provides that "[n]o state employee of the executive branch shall knowingly solicit or accept any gift from a lobbyist."  Executive Order ¶1. As defined in the Executive Order:

> "Gift" means anything of value, including, but not limited to, food, lodging, transportation, personal services, gratuities, subscriptions, memberships, trips, loans, extensions of credit, forgiveness of debts, or advances or deposits of money.  "Gift" does not include (i) unsolicited tokens or awards of appreciation, honorary degrees, or bona fide awards in recognition of public service in the form of a plaque, trophy, desk item, wall memento, and similar items, provided that any such item shall not be in a form which can be readily converted to cash; (ii) sample merchandise, promotional items, and appreciation tokens, if they are routinely given to customers, suppliers, or potential customers or suppliers in the ordinary course of business; (iii) gifts, devises, or inheritances from family members; (iv) gifts from other state employees; (v) gifts from personal friends where it is clear that the gift is motivated by personal friendship and not by the employee's position; or (vi) meals, lodging, transportation or other benefits resulting from the business or employment activities of an employee's spouse when it

4

is clear that such benefits have not been offered or enhanced because of the employee's position.

Executive Order ¶ 6.b.

11.    The Executive Order defines "lobbyist," using the definition in Section 105.470(6), RSMo, as "any natural person defined as an executive lobbyist, judicial lobbyist, elected local government official lobbyist, or a legislative lobbyist." These terms are defined in the same statute as follows:

> **"Elected local government official lobbyist"**, any natural person employed specifically for the purpose of attempting to influence any action by a local government official elected in a county, city, town, or village with an annual operating budget of over ten million dollars;
>
> [. . .]
>
> **"Executive lobbyist"**, any natural person who acts for the purpose of attempting to influence any action by the executive branch of government or by any elected or appointed official, employee, department, division, agency or board or commission thereof and in connection with such activity, meets the requirements of any one or more of the following:
>
> (a) Is acting in the ordinary course of employment on behalf of or for the benefit of such person's employer; or
>
> (b) Is engaged for pay or for any valuable consideration for the purpose of performing such activity; or
>
> (c) Is designated to act as a lobbyist by any person, business entity, governmental entity, religious organization, nonprofit corporation, association or other entity; or

(d) Makes total expenditures of fifty dollars or more during the twelve-month period beginning January first and ending December thirty-first for the benefit of one or more public officials or one or more employees of the executive branch of state government in connection with such activity.

[. . .]

**"Judicial lobbyist"**, any natural person who acts for the purpose of attempting to influence any purchasing decision by the judicial branch of government or by any elected or appointed official or any employee thereof and in connection with such activity, meets the requirements of any one or more of the following:

(a) Is acting in the ordinary course of employment which primary purpose is to influence the judiciary in its purchasing decisions on a regular basis on behalf of or for the benefit of such person's employer, except that this shall not apply to any person who engages in lobbying on an occasional basis only and not as a regular pattern of conduct; or

(b) Is engaged for pay or for any valuable consideration for the purpose of performing such activity; or

(c) Is designated to act as a lobbyist by any person, business entity, governmental entity, religious organization, nonprofit corporation or association; or

(d) Makes total expenditures of fifty dollars or more during the twelve-month period beginning January first and ending December thirty-first for the benefit of one or more public officials or one or more employees of the judicial branch of state government in

6

connection with attempting to influence such purchasing decisions by the judiciary.

[. . .]

**"Legislative lobbyist"**, any natural person who acts for the purpose of attempting to influence the taking, passage, amendment, delay or defeat of any official action on any bill, resolution, amendment, nomination, appointment, report or any other action or any other matter pending or proposed in a legislative committee in either house of the general assembly, or in any matter which may be the subject of action by the general assembly and in connection with such activity, meets the requirements of any one or more of the following:

(a) Is acting in the ordinary course of employment, which primary purpose is to influence legislation on a regular basis, on behalf of or for the benefit of such person's employer, except that this shall not apply to any person who engages in lobbying on an occasional basis only and not as a regular pattern of conduct; or

(b) Is engaged for pay or for any valuable consideration for the purpose of performing such activity; or

(c) Is designated to act as a lobbyist by any person, business entity, governmental entity, religious organization, nonprofit corporation, association or other entity; or

(d) Makes total expenditures of fifty dollars or more during the twelve-month period beginning January first and ending December thirty-first for the benefit of one or more public officials or one or more employees of the legislative branch of state government in connection with such activity.

§ 105.470(1), (2), (4), (5), RSMo.

12.    The Executive Order further provides that "[a]ny state employee of the executive branch that violates this Order is subject to disciplinary action, up to termination of employment." Executive Order ¶ 5.

13.    The Governor of Missouri has maintained the Executive Order, so employees of the state executive branch remain subject to discipline, up to termination of employment, for accepting anything of value from lobbyists.

**B.    Institute for Justice Seeks to Provide Written Materials to Employees of the Missouri Executive Branch.**

14.    As part of IJ's mission, IJ employees write books and reports on public-policy issues. For example, in December 2016, Encounter Books published the book *Bottleneckers: Gaming the Government for Power and Private Profit* by William Mellor and Dick M. Carpenter II, IJ employees, which discusses the problem of politically powerful groups using government power to limit competition and thereby reap monopoly profits and other benefits. And in November 2017, IJ published *License to Work 2*, a report that examines the burdens of occupational licensing laws in all 50 states and the District of Columbia.

15.    *Bottleneckers* is a commercially available book with a list price of $27.99. However, IJ currently receives an author's discount that brings its purchase price for the book to less than $17.00.

16.    *License to Work 2* is available for free download through IJ's website, though at some time in the future it may be available for download on Amazon Kindle devices for a nominal charge (likely $2.00). IJ's per-unit cost for printing *License to Work 2* is approximately $6-10.

17.    Although IJ's per-unit purchase or printing costs for these publications is less than $100 each, both publications are the result of hundreds or thousands of hours of work by IJ employees. IJ has not calculated the total cost of staff time spent producing the book or report.

18.    IJ believes that both of these publications would be helpful to government officials trying to understand the issue of occupational licensing, and, as part of its lobbying efforts, IJ wants

to provide copies of these materials to executive branch employees in Missouri.  In addition to specifically wanting to provide these two publications, IJ generally wants to provide books, studies, and reports to Missouri executive branch employees in furtherance of its lobbying activities.

19.     In or around December 2017, IJ requested an Advisory Opinion from the Missouri Ethics Commission regarding, in relevant part, whether the Executive Order prohibits IJ's lobbyists from providing executive branch officials with books and reports on public policy that IJ believes are relevant and useful to its lobbying efforts in Missouri.  An accurate copy of a draft of IJ's request for an Advisory Opinion, which is identical in substance to the final letter that was sent to the MEC with the differences being the addition of a date, signature, and method of delivery, is attached as Exhibit 2.

**C.      The Missouri Ethics Committee Informs IJ that Executive Employees Cannot Accept IJ's Written Materials.**

20.     In a letter dated January 16, 2018, the previous Executive Director of the MEC informed IJ that its publications *Bottleneckers* and *License to Work 2* appear to "fall within the definition of gift" under the Executive Order "because these publications constitute items of value."  An accurate copy of this letter is attached as Exhibit 3.  A redacted version of this letter is publicly available in a database of advisory opinions on the MEC's website.   Under the interpretation in the MEC's letter, state employees of the executive branch subject to the Executive Order are prohibited from knowingly receiving such publications from IJ's lobbyists.

21.     Because (i) the MEC advised IJ that state employees of the executive branch subject to the Executive Order are prohibited from knowingly receiving written materials that have value from lobbyists and (ii) under paragraph five of the Executive Order, "[a]ny state employee of the executive branch that violates this Order is subject to disciplinary action, up to termination of employment," IJ has refrained from and continues to refrain from sending its publications to state employees of the executive branch.

22.    IJ cannot freely distribute its publications to communicate with state employees of the executive branch because those employees must reject the publications, purchase the publications, or be subject to disciplinary action, up to termination of employment, for knowingly accepting IJ's publications from lobbyists.  Thus, the Executive Order has violated and continues to violate IJ's First Amendment rights to Freedom of Speech, and to Petition the Government for Redress of Grievances.  The Executive Order also violates IJ's Fourteenth Amendment rights to Equal Protection because it only prohibits lobbyists from sharing publications or other written materials of value with state employees of the executive branch.

### COUNT I – VIOLATIONS OF FIRST AND FOURTEENTH AMENDMENTS

23.    Plaintiff repeats the allegations set forth in paragraphs 1-22, and incorporates them by reference.

24.    The First Amendment of the U.S. Constitution provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people to . . . petition the government for a redress of grievances."  U.S. Const. amend. I.  The First Amendment has been incorporated under the Fourteenth Amendment to apply to the states, including Missouri, under *Gitlow v. New York*, 268 U.S. 652 (1925).

25.    The Fourteenth Amendment of the U.S. Constitution provides, in relevant part, that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.

26.    Defendants, using their respective offices and acting under color of state law, violated and are violating IJ's rights to Free Speech and Petitioning under the First Amendment, and its rights to Equal Protection under the Fourteenth Amendment.

27.    IJ seeks declaratory relief and prospective injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202, declaring the Executive Order unconstitutional as applied to IJ's distribution of books, studies, and reports in furtherance of its lobbying activities.  IJ seeks a preliminary and permanent injunction enjoining the enforcement of the provisions of the Executive

Order as applied to IJ's distribution of books, studies, and reports in furtherance of its lobbying activities.  IJ further seeks its costs and reasonable attorney fees under 42 U.S.C. § 1988.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. That this Court issue a declaration that the Executive Order is unconstitutional as applied to IJ's distribution of books, studies, and reports in furtherance of its lobbying activities;

2. That this Court enter a temporary restraining order and/or a preliminary injunction enjoining enforcement of the Executive Order as applied to IJ's distribution of books, studies, and reports in furtherance of its lobbying activities, pending a trial on the merits;

3. That this Court enter a permanent injunction, enjoining enforcement of the Executive Order as applied to IJ's distribution of books, studies, and reports in furtherance of its lobbying activities;

4. That IJ be awarded its costs in this action, including reasonable attorney fees under 42 U.S.C. § 1988; and

5. Such other relief as is just and proper.

Dated: October 5, 2018                    Respectfully submitted,

                                          **MARGULIS GELFAND, LLC**

                                          /s/ *Justin K. Gelfand*
                                          Justin K. Gelfand, #62265MO
                                          8000 Maryland Ave., Ste. 420
                                          St. Louis, MO 63105
                                          Telephone: 314.390.0234
                                          Facsimile: 314.485.2264
                                          justin@margulisgelfand.com

                                          **AKIN GUMP STRAUSS HAUER & FELD, LLP**

                                          Rex S. Heinke (Admission Pending)
                                          Jessica M. Weisel (Admission Pending
                                          Kelly A. Handschumacher (Admission Pending)
                                          1999 Avenue of the Stars, Suite 600
                                          Los Angeles, CA 90067-6022
                                          Telephone: 310.229.1000
                                          Facsimile: 310.229.1001
                                          rheinke@akingump.com
                                          jweisel@akingump.com
                                          khandschumacher@akingump.com


                                          *Attorneys for Plaintiff Institute for Justice*

12